IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Ronnie Wright, | Civil Action No. 2:10-2449-DCN-BHH |
| Plaintiff, | |
| vs. | **REPORT AND RECOMMENDATION** |
| Michael J. Astrue, | **OF MAGISTRATE JUDGE** |
| Commissioner of Social Security, | |
| Defendant. | |

This case is before the Court for a report and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a) D.S.C., concerning the disposition of Social Security cases in this District, and 28 U.S.C. § 636(b)(1)(B).[1]

The plaintiff, Ronnie Wright, brought this action pursuant to §§ 205(g) and 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. §§ 405(g), 1383(c)(3)[2]), to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") regarding his claims for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI") under Titles II and XVI of the Social Security Act, as amended (the "Act").

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

[2] 42 U.S.C. § 1383(c)(3) "incorporates the review provisions of 42 U.S.C. § 405(g)." *Melkonyan v. Sullivan*, 501 U.S. 89, 92 (1991).

**RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS**

The plaintiff was forty-four years old on his alleged onset of disability. (R. at 24.) He alleges he became disabled on January 14, 2005,[3] due to several ailments. (*See* R. at 78, 470.) The administrative law judge ("ALJ") found that the plaintiff has a "marginal" education and past work experience as a roofer and a security officer. (R. at 24.)

The plaintiff filed applications for DIB and SSI[4] on January 18, 2006. (R. at 51; *see also* R. at 16.) After his applications were denied in initial and reconsidered determinations (R. at 33-35), he requested a hearing before an ALJ (R. at 47). On November 5, 2008, the ALJ conducted a *de novo* hearing at which the plaintiff, his legal counsel and a vocational expert appeared. (R. at 467.) By decision dated April 7, 2009, the ALJ found that the plaintiff was not disabled from his alleged onset of disability through March 11, 2007, but that he was disabled as of March 12, 2007. (R. at 26.) After the Appeals Council denied the plaintiff's request for review on August 20, 2010 (R. at 6), the ALJ's decision became the Commissioner's final decision for purposes of judicial review.

In making his determination that the plaintiff was not entitled to benefits between January 14, 2005, and March 11, 2007, the Commissioner has adopted the following findings of the ALJ:

> (1)   The claimant meets the insured status requirements of the Social Security Act through March 31, 2009.
>
> (2)   The claimant has not engaged in substantial gainful activity since January 14, 2005, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).
>
> (3)   The claimant has the following severe combination of impairments: coronary artery disease, osteoarthritis, anxiety, and depression (20 CFR 404.1520(c) and 416.920(c)).

---

[3] The plaintiff initially alleged disability from August 11, 2002. (R. at 51.) The plaintiff, however, received disability benefits from August 11, 2002, through December 2004 (*see* R. at 16), and thus is precluded from receiving benefits for the same period.

[4] The documents associated with the plaintiff's SSI application are not included in the transcript.

(4) Since the alleged onset of disability, the claimant has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)).

(5) After careful consideration of the entire record, I find that, prior to March 12, 2007, the date the claimant became disabled, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except for pushing and pulling with his lower extremities repetitively on more than a frequent basis, climbing ramps or stairs on more than an occasional basis, kneeling on more than an occasional basis, crouching on more than an occasional basis, crawling on more than an occasional basis, bending and stooping on more than an occasional basis, and climbing ladders, ropes, and scaffolding. He should also avoid even moderate exposure to hazards.

(6) After careful consideration of the entire record, I find that, beginning on March 12, 2007, the claimant has had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except for being able to stand and walk as much as two hours in an eight-hour workday, needing to periodically alternate sitting and standing, performing postural activities more than occasionally, and needing to avoid concentrated exposure to humidity, pulmonary irritants and hazards.

(7) Since the alleged onset date of disability, the claimant has been unable to perform past relevant work (20 CFR 404.1565 and 416.965).

(8) The claimant was born on October 9, 1960 and was 44 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

(9) The claimant has a marginal education, is unable to read and write, and is able to communicate in English (20 CFR 404.1564 and 416.964).

(10) Prior to March 12, 2007, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. Beginning on March 12, 2007, the claimant has not been able to transfer any jobs skills to other

>occupations within the assigned residual functional capacity (SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
>(11)   Prior to March 12, 2007, considering the claimant's age, education, work experience, and residual functional capacity, there were a significant number of jobs in the national economy that the claimant could have performed (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).
>
>(12)   Beginning on March 12, 2007, considering the claimant's age, education, work experience, and residual functional capacity, there are not a significant number of jobs in the national economy that the claimant could perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).
>
>(13)   The claimant was not disabled prior to March 12, 2007, but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

## **APPLICABLE LAW**

The Act provides that DIB[5] shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). "Disability" is defined in the Act as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than" twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).[6]

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial

---

[5] Eligibility requirements for SSI differ, *see* 42 U.S.C. § 1382, but are not an issue in the case *sub judice*.

[6] The regulations applying these sections are contained in different parts of Title 20 of the Code of Federal Regulations (C.F.R.). Part 404 applies to federal old-age, survivors, and disability insurance, and part 416 applies to supplemental security income for the aged, blind, and disabled. Since the relevant portions of the two sets of regulations are identical, the citations in this report will be limited to those found in part 404. All of this Court's regulatory references are to the 2009 version of the C.F.R.

4

gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Administration's official Listing of Impairments found at 20 C.F.R. part 404, subpart P, appendix 1,[7] (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment.  *See* 20 C.F.R. § 404.1520.   If an individual is found not disabled at any step, further inquiry is unnecessary.  *Id.*; *see also Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work.  Social Security Ruling (SSR) 82-61, *reprinted in West's Social Security Reporting Service: Rulings 1975-1982*, at 836 (West Publ'g Co. 1983).  The plaintiff bears the burden of establishing his inability to work within the meaning of the Act.  42 U.S.C. § 423(d)(5)(a); *see also id.* § 1382c(a)(3)(H)(i).  He must make a prima facie showing of disability by showing that he is unable to return to his past relevant work.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy.  The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert.  *Id.* at 191-92.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied.  *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Consequently, the Act precludes a de novo review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence.  *Pyles v.*

---

[7] Although the listings are contained only in part 404, they are incorporated by reference into part 416 by 20 C.F.R. § 416.925.

*Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing U.S.C. § 405(g)*; Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)).  The phrase "substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

Thus, it is the duty of this Court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that his conclusion is rational.  *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).  If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed.  *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## DISCUSSION

The plaintiff contends that the ALJ erred in failing to find him disabled.  Specifically, the plaintiff alleges that the ALJ erred in (1) failing give controlling weight to the opinions of his treating physicians; (2) failing to properly determine his onset of disability; (3) relying upon the Medical-Vocational Guidelines in finding him disabled; (4) failing to consider his impairments in combination; and (5) failing to properly analyze his credibility.  The Court will address each allegation in turn.

**I. Treating Physician's Opinion; Determination of Onset Date**

The plaintiff argues that the ALJ erred in failing to assign proper weight to the opinions of some of his caregivers.  It is true that the medical opinion of a treating physician is entitled to controlling weight, if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.  *See* 20 C.F.R. § 404.1527(d)(2); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  A "medical opinion" is a "judgment[ ] about the nature and severity of [the claimant's]

impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite impairment(s), and [his] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). However, statements that a patient is "disabled" or "unable to work" or meets the Listing requirements or similar statements are not medical opinions but, rather, are administrative findings reserved for the Commissioner's determination. SSR 96-5p, 61 Fed. Reg. 34,471-01, 34,474 (July 2, 1996). Furthermore, even if the claimant can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supports the decision. *See Blalock*, 483 F.2d at 775.

The plaintiff first refers to several statements from his records from "Upstate Medical Rehabilitation," where Dr. Robert LeBlond was one of his caregivers. The earliest statement is recorded by certified physician's assistant David Goldsmith,[8] who wrote on September 7, 2007, "At last visit with Dr. LeBlond it was recommended that [the plaintiff] continue to pursue [Social Security disability]." (R. at 385.) But the previous record from Dr. LeBlond, dated June 25, 2007, stated that medications kept the plaintiff's pain "under fair control" with no side effects, and he had no change in strength or sensation. The plaintiff had had shoulder surgery and that helped his pain, and he was feeling better after having a cardiac stent implanted. Dr. LeBlond wrote, "[The plaintiff] notes no other problems at this point including depression," but yet he opined, "[I] recommended that he continue to pursue [Social Security disability] as I do not believe that he will be able to return to work." (R. at 374.) Although Mr. Goldsmith saw the plaintiff the previous February, there is no indication that Dr. LeBlond treated the plaintiff between a November 2005 appointment, and the June 25, 2007 appointment. At no point prior to the June 25th record did Dr. LeBlond indicate that the plaintiff was unable to work.

---

[8] The Court notes that, during the relevant period, Mr. Goldsmith rendered most of the plaintiff's care at this practice.

The plaintiff's psychiatrist, Geera DeSai, offered her opinion on his third visit to her, in December 2007. (*See* R. at 407-10.) Dr. DeSai noted that the plaintiff had "quite bad" depression, mostly due to his pain. (R. at 410.) The plaintiff's mother was dying and his only income was his wife's SSI. Dr. DeSai concluded that the plaintiff's "chronic pain, sever [sic] anxiety and depression are quite debilitating." (R. at 408.)

The plaintiff consulted cardiologist Sloan Martin, Jr., upon referral from his treating cardiologist, Dr. Zahid Ali.[9] (*See* R. at 406.) The plaintiff told Dr. Martin that he had angina "always brought on by any type of physical activity," which the doctor explained was "very limiting since the individual is only capable of very limited physical activity." (*Id.*) Dr. Martin opined that the plaintiff's angina, combined with his "orthopedic issue," rendered him "clearly disabled." (*Id.*)

The ALJ discussed these opinions, and found them "to be well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the record *with regard to the claimant's condition as of March 12, 2007, but not before.*" (R. at 23 (emphasis added).) He found that there were no treating source opinions in the record prior to this time, and thus relied upon the opinions of the state agency medical consultants.[10] (R. at 22.) *See* 20 C.F.R. § 404.1527(f)(2)(i)

---

[9] There is no disability opinion from Dr. Ali in the transcript. There is no evidence that Dr. Martin ever treated the plaintiff. *Cf. Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (holding "the opinion of a claimant's treating physician ... is entitled to great weight for it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time").

[10] The plaintiff apparently misconstrued the ALJ's statement, because he mistakenly asserts that the ALJ "expressly stated that he gave greater weight to the opinions" of the state agency consultants "than the reports and opinions of the treating physicians." (Pl.'s Br. 20.) The ALJ largely adopted the opinions of the agency consultants for the period where there were no treating physician opinions, namely, prior to the worsening of the plaintiff's condition in March 2007. *See Smith v. Schweiker*, 795 F.2d 343, 345-46 (4th Cir. 1986) (opinion of non-examining physician can constitute substantial evidence to support the Commissioner's decision); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) ("[T]he testimony of a non-examining physician can be relied upon when it is consistent with the record.") (citation omitted)). He did not, however, adopt the last consultant opinion, dated August 18, 2008 (*see* R. at 422-29), because he found "the medical opinions of the treating sources to be more reliable and consistent with the record as a whole" (R. at 23). The plaintiff has not demonstrated that the earlier agency consultant opinions are not consistent with the entire medical record, and there is no indication of error in the ALJ crediting these opinions, as they were not given precedence over

8

(explaining that state agency consultants are "highly qualified physicians and psychologists who are also experts in Social Security disability evaluation," and ALJs must consider their findings as opinion evidence).

The plaintiff claims that his caregiver opinions relate back to his alleged onset of disability, but the Court agrees with the ALJ. In a disability case, the factfinder must establish an onset date of disability. SSR 83-20, *reprinted in West's Social Security Reporting Service: Rulings 1983-1991*, at 49, 49 (West Publ'g Co. 1992). This decision must be made in accordance with the law, but also in reliance on the evidence before the adjudicator. *See id.* at 50 ("The medical evidence serves as the primary element in the onset determination.").

The evidence before the ALJ supports his determination that there was no onset of disability before March 12, 2007. There is no indication that Dr. LeBlond did any more than "sign off" on Mr. Goldsmith's notes or give the plaintiff his injections other than on November 16, 2005, when he wrote that the plaintiff was "coping fairly well despite pain issues." (R. at 389.) As the ALJ noted, magnetic resonance imaging of his lumbar spine in the Fall of 2006 was negative. (R. at 20; *see also* R. at 376). Dr. LeBlond's next encounter with the plaintiff was on June 25, 2007, when he opined that the plaintiff should seek Social Security disability, but the ALJ found that the plaintiff was disabled as of March 12, 2007.

There is no indication that Dr. DeSai started treating the plaintiff before October 2007 (*see* R. at 412), or that the plaintiff sought any mental health treatment prior to this time. In fact, Dr. LeBlond noted at the June 2007 visit that the plaintiff did not complain of depression, and Dr. Ali marked no for depression in April and July of 2007 (R. at 414-15). And, of course, Dr. Martin saw the plaintiff only once, and not until September 2007.

---

contemporaneous treating source opinions.

The plaintiff further argues that there is no showing that his impairment worsened after March 12, 2007, but the ALJ ably supported this onset date. (*See* R. at 22-23.) The ALJ first discussed the history of the plaintiff's cardiac condition (R. at 20-21), explaining that cardiac catheterizations in April and October of 2004 revealed only mild coronary artery disease and normal ventricular function (*see, e.g.*, R. at 123, 258, 285). A chest x-ray in March 2005 showed no active disease. (R. at 260.) In November 2005, the plaintiff's general practitioner diagnosed his chest pain as non-cardiac. (R. at 130.)

On March 12, 2007, the plaintiff entered the hospital with unstable angina. (R. at 312.) Cardiac catheterization revealed 70% stenosis of the left anterior descending coronary artery, and the plaintiff had a stent inserted. A stress test the following July showed "fixed defects" and an ejection fraction of 54% (R. at 22 (citing R. at 417)), and a December catheterization showed a 50 to 70% stenosis just prior to a widely patent stent (R. at 22-23 (citing R. at 420)). The above-referenced opinions followed the plaintiff's March stenting and reinforced the ALJ's designation. As the ALJ accorded "great weight" to the proffered opinions, and provided substantial evidence to support his onset decision, the plaintiff has not demonstrated reversible error.

## II. The Medical-Vocational Guidelines

The plaintiff next contends that the ALJ erred in relying upon the Medical-Vocational Guidelines (the "grids") to find him disabled prior to March 12, 2007. At step five of the sequential evaluation process, the Commissioner bears the burden of providing evidence of a significant number of jobs in the national economy that a claimant could perform. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). To improve both the uniformity and efficiency of this determination, the Commissioner promulgated the grids.[11] *Heckler v.*

---

[11] The grids

consist of a matrix of the four factors identified by Congress – physical ability, age, education, and work experience – and set forth rules that identify whether jobs requiring specific

*Campbell*, 461 U.S. 458, 461 (1983). If the claimant has no nonexertional impairments that prevent him from performing the full range of work at a given exertional level, the Commissioner may rely solely on the grids to satisfy his burden of proof. *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987); *Gory v. Schweiker*, 712 F.2d 929, 930-31 (4th Cir. 1983).

In the case, however, where a claimant suffers from both exertional and nonexertional limitations, the grids "are not conclusive but may only serve as guidelines." *Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989) (citing *Wilson v. Heckler*, 743 F.2d 218 (4th Cir. 1984)). *See also* 20 C.F.R. § 404.1569a(d). In such a case, the Commissioner must prove through vocational expertise that jobs exist in the national economy which the claimant can perform. *Walker*, 889 F.2d at 49-50.

The plaintiff contends that, because he suffered from non-exertional impairments, the ALJ was precluded from applying the grids to find him not disabled. And the ALJ agreed, stating that, prior to March 12, 2007, the plaintiff's "ability to perform all or substantially all of the requirements of [light work] was impeded by additional limitations." (R. at 25.) Thus, he called upon a vocational expert to answer whether an individual with the plaintiff's limitations could perform a significant number of jobs in the national economy. (R. at 496-501.) *See Walker*, 889 F.2d at 50 ("The purpose of bringing in a vocational expert is to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."). There is thus no merit to the plaintiff's argument.

### III. Combined Effects of the Impairments

---

combinations of these factors exist in significant numbers in the national economy. Where a claimant's qualifications correspond to the job requirements identified by a rule, the guidelines direct a conclusion as to whether work exists that the claimant could perform. If such work exists, the claimant is not considered disabled.

*Heckler v. Campbell*, 461 U.S. 458, 461-62 (1983) (footnotes omitted).

The plaintiff complains that the ALJ erred by failing to evaluate the combined effect of his impairments. When a claimant suffers from multiple impairments, the ALJ must consider their combined effect in determining whether the claimant is disabled. *See Walker*, 889 F.2d at 50; *Hicks v. Gardner*, 393 F.2d 299, 301 (4th Cir. 1968). Congress has explicitly required that "the combined effect of all the individual's impairments" be considered, "without regard to whether any such impairment if considered separately" would be sufficiently severe. 42 U.S.C. § 423(d)(2)(c); *see also Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989). As an important "corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments." *Walker*, 889 F.2d at 50.

In W*alker*, the Fourth Circuit Court of Appeals remanded the plaintiff's claim because the ALJ failed to adequately consider and explain his evaluation of the combined effects of the claimant's impairments. *See id.* at 49-50. The ALJ found that the claimant suffered from several ailments but noted the effect or non-effect of each impairment separately. *See id.* The ALJ summarily concluded that "the claimant did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1, Subpart P, Reg. No. 4." *Id.* at 49. The Court rejected this conclusion as inadequate because the ALJ neither analyzed nor explained his evaluation of the cumulative effect of the claimant's impairments. *Id.* at 49-50.

Frankly, in the Court's experience, few ALJ decisions are substantially more detailed than that in *Walker*. Yet the ALJ here has done enough, particularly in light of the plaintiff's own limited explanation of how more consideration might have changed the outcome. *Cf. Brock v. Chater*, 84 F.3d 726, 729 (5th Cir. 1996) ("We will not reverse the decision of an ALJ ... where the claimant makes no showing that he was prejudiced in any way by the deficiencies he alleges."). To start, the ALJ, albeit in boilerplate, separately indicated that he considered both the impairments "in combination" (R. at 18) and "the entire record" (R. at 19). Then, after discussing each impairment individually, the ALJ agreed with the state

12

agency medical consultants who decided the plaintiff's residual functional capacity ("RFC") "as a result of the[] combined impairments." (R. at 21.)  Further, the state consultants discussed the impairments together when making their RFC determination.  (R. at 154-55; 288-89, 294.)  *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002) (the ALJ need only articulate the evidence sufficiently to enable the court to trace his path of reasoning); *Reddy v. Commodity Futures Trading Comm'n*, 191 F.3d 109, 125-26 (2d Cir. 1999) (a reviewing court will not be "disposed to overturn a sound decision if the agency's path, although not ideally clear, may reasonably be discerned."  (citation omitted)).

Next, the ALJ found that all of the plaintiff's impairments "intensified significantly after the progression of his cardiovascular problems" on March 12, 2007.  (R. at 21-22.)  Also, the ALJ found that the plaintiff did not have a "combination of impairments" prior to March 12, 2007, that would have prevented him from performing jobs within the determined RFC. (R. at 22.)  Finally, the ALJ explained that "the state agency consultants did not adequately consider the claimant's subjective complaints or the *combined effect* of his impairments" in assessing his RFC after March 12, 2007.  (R. at 23 (emphasis added).)  While not overwhelmingly so, even this much discussion puts the present case outside the factual ambit of *Walker*.  Here, there is at least plain treatment of all the impairments together by the ALJ.

Moreover, other circuit courts of appeal have agreed that an ALJ's separate discussion of a claimant's impairments and other evidence of record is sufficient to show that she sufficiently considered the claimant's impairments in combination.  *See Browning v. Sullivan*, 958 F.2d 817, 821 (8th Cir. 1992) (finding that ALJ sufficiently considered a claimant's impairments in combination when he separately discussed each impairment, the complaints of pain and the daily activities, and made a finding that the claimant's impairments did not prevent her from performing her past relevant work).  "To require a more elaborate articulation of the ALJ's thought processes would not be reasonable."

*Browning*, 958 F.2d at 821 (citing *Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987)). And this seems a sensible view. To the extent the ALJ expressly discusses all of the relevant impairments and symptoms at some juncture in the decision, even if distinctly – by virtue of the limits of form and prose, it would be a strange presumption to assume that he somehow simultaneously failed to consider them in the context of their combined effect, simply for a failure to say so more directly and thoroughly than the rote pronouncement that he did. The ALJs are well aware of their responsibility to consider it all.

And, to that end, therefore, it is the plaintiff's responsibility to explain how the ALJ's alleged failure to be more complete in explanation, than is present here, somehow harmed the conclusion drawn. Respectfully, the Court would suggest that the plaintiff again has done much less than is required. The plaintiff's objection stops largely at the accusation that the ALJ's consideration is too thin, which, as the plaintiff contends, is the appropriate legal point, considering the applicable standard of review, but fails to take the additional step of suggesting how the outcome could have been different. In other words, there is a failure to demonstrate anything more than the harmlessness of the error.

To restate, the Court believes that the ALJ satisfied his obligation to treat the combined effects of all relevant impairments, in the first instance, and, further, that the plaintiff has not offered any reason to conclude that more would have produced a different result.

**IV. Credibility**

The plaintiff also complains that the ALJ failed to assess the credibility of the plaintiff's testimony, or explain why he found the plaintiff's testimony credible for the period after March 11, 2007, but not prior thereto. The plaintiff posits that the ALJ committed reversible error by failing to provide a credibility analysis for the period prior to March 12, 2007. 20 C.F.R. § 404.1529(a) provides the authoritative standard for the evaluation of

symptoms in disability determinations. *See Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996). Under the regulation, "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Id.* at 594.

"First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and *which could reasonably be expected to produce the pain or other symptoms alleged*.'" *Id.* at 591 (quoting 20 C.F.R. § 404.1529(b)). This threshold test "does not . . . entail a determination of the 'intensity, persistence, or functionally limiting effects' of the claimant's asserted pain." *Id.* at 594. Second, and only after the claimant satisfies the threshold inquiry, is there an evaluation of "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work." *Id.* at 595. When the ALJ fails to "expressly consider the threshold question" and instead proceeds "directly to considering the credibility of [the] subjective allegations," remand is warranted. *Id.* at 596.

It is critical to proceed through the steps in order, because "once objective medical evidence establishes a condition which could reasonably be expected to cause pain of the severity a claimant alleges, those allegations may not be discredited simply because they are not confirmed by objective evidence of the severity of the pain." *Id.* at 593. In other words, once an ALJ concludes that an impairment could reasonably be expected to produce the pain alleged, she ought to view any inconsistency or defect in the plaintiff's subjective testimony through a more discriminating lens because the plaintiff's subjective allegations, at that point, are consistent with the objective expectations.

The ALJ summarized the plaintiff's testimony (R. at 19) that, due to his chronic back and leg pain, he was unable to twist, stoop, bend, lift, squat or stretch (R. at 486). At his hearing, the plaintiff was wearing knee braces and using a cane he testified was prescribed by his doctor. (R. at 489-90.) Due to pain, he did not sleep well and had to constantly adjust his position. (R. at 485, 488.) The plaintiff testified that he can sit comfortably for

only ten to fifteen minutes (R. at 489), and his daily activities consist only of watching television and talking on the phone (R. at 494), although he later referred to performing some vehicle maintenance (*see* R. at 495).  The ALJ also cited the plaintiff's testimony concerning his situational depression.  (R. at 21; *see also* R. at 484.)

The ALJ found that the plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible prior to March 12, 2007, to the extent they are inconsistent with the [RFC] assessment . . . ."  (R. at 21.)  The ALJ discussed medical records which contradict the plaintiff's testimony.  *See* SSR 96-7p, 61 Fed. Reg. 34,483-01, 34,486 (July 2, 1996) (a strong indication of credibility is the consistency, both internally and with other information in the case record, of the claimant's statements, especially to the extent that they are consistent with the medical signs, laboratory findings, and other information provided by medical sources).  In January 2005, the plaintiff reported "sharp to achy" pain, but with "prolonged or physically demanding activities." (R. at 392; *see also* R. at 20.)  According to emergency room records from August 2006, the plaintiff experienced back pain after twisting while grabbing a wheelbarrow. (R. at 337.)  At that time, the plaintiff reported that the only medication he was taking was for his blood pressure.  *Cf. Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (holding that, if symptoms are, or can be, reasonably controlled by medication, they may not be considered disabling under the Act).

In his testimony, the plaintiff made no distinction as to time periods, nor indicated there was ever any deterioration in his condition.  Yet prior to March 12, 2007, there was no finding of any significant heart disease; the plaintiff had not sought mental health counseling; he was not wearing knee braces; and no caregiver had suggested he pursue disability benefits or opined that he was disabled. (R. at 21-22.)  *See Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005) (the failure to seek treatment constitutes a reason for

16

discounting subjective claims); *Craig*, 76 F.3d at 595 (a claimant's allegations about her pain "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment").

Contrary to the plaintiff's assertion, the ALJ's decision contained specific findings, sufficiently detailed, and supported by substantial evidence. Accordingly, the plaintiff has failed to demonstrate that the ALJ erred in finding that the plaintiff's subjective complaints are inconsistent with the record prior to March 12, 2007. *See Hines v. Barnhart*, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (noting that a claimant's allegations "need not be accepted to the extent that they are inconsistent with available evidence"). Moreover, the court may not substitute its judgment for the ALJ's. *See Craig*, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence).

## **CONCLUSION AND RECOMMENDATION**

Based on the foregoing, this Court concludes that the findings of the ALJ are supported by substantial evidence and recommends that the decision of the Commissioner be affirmed.

IT IS SO RECOMMENDED.

 s/Bruce Howe Hendricks  
BRUCE H. HENDRICKS  
UNITED STATES MAGISTRATE JUDGE

October 18, 2011  
Greenville, South Carolina